UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey K. Caswell, Victoria Caswell,
and Russ Dreyer,

                Plaintiffs,

v.

City of Bloomington,

                Defendant.

Civ. No. 05-2519 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

Lee A. Henderson, Hessian & McKasy P.A., Minneapolis, Minnesota, for Plaintiffs.

John M. Baker and John W. Ursu, Greene Espel P.L.L.P., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiffs Jeffrey Caswell, Victoria Caswell, and Russ Dryer ("Plaintiffs") allege that Defendant City of Bloomington (the "City") violated their rights under the United States and Minnesota Constitutions by enacting an ordinance that fails to protect them from potential hazards associated with being in the vicinity of an airport runway. This matter comes before the Court on the City's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

In May 2004, the City adopted a zoning ordinance, Bloomington City Code § 19.38.03 (the "Ordinance"), regulating land use surrounding a newly constructed north-

south runway at the Minneapolis-Saint Paul International Airport (the "Airport"). The Ordinance reads, in relevant part:

> Within the portion of the Airport Runway (AR-17) Overlay District *designated as Safety Zone B* as contained in Section V Land Use Safety Zoning of the 2004 MSP Zoning Ordinance and shown on MSP Zoning Map Safety Zones-Plate SZ-21 and Plate SZ-27, *the following uses are prohibited* unless a variance permitting the use is granted by the Board of Adjustment established by the 2004 MSP Zoning Ordinance:
>
> (I)     Amphitheaters
> (II)    Campgrounds
> (III)   Churches
> (IV)    Fuel storage tank farms
> (V)     Above-ground fuel tanks
> (VI)    Gasoline station
> (VII)   Hospital
> (VIII)  Nursing homes
> (IX)    Residential uses
> (X)     Schools
> (XI)    Stadiums
> (XII)   Theaters
> (XIII)  Trailer courts

Bloomington City Code § 19.38.03(c) (emphasis added). The Ordinance is modeled after a zoning ordinance promulgated by the Joint Airport Zoning Board ("JAZB"), an entity created by statute to establish zoning guidelines when land use planning around an airport involves more than a single municipality. See Minn. Stat. § 360.063(3). In this case, when planning and construction of the new north-south runway at the Airport began, the Metropolitan Airports Commission created the JAZB to create zoning regulations applicable to the runway hazard areas. (Ursu Aff. Ex. F ¶ 72.) The City accepted an invitation to participate as a representative on the JAZB. (Ursu Aff. Ex. F ¶¶ 37, 73.) By

2

participating on the JAZB and adopting the Ordinance, the City retained its authority to enforce airport zoning regulations within its boundaries.  See Minn. Stat. § 360.063(3)(c).

Plaintiff Jeffrey Caswell is the chief executive officer of Interstate Companies, Inc. ("Interstate"), a business located at 2501 and 2601 American Boulevard East in Bloomington, Minnesota.  (Caswell Aff. ¶ 1.)  Plaintiff Russ Dreyer is an employee of Interstate and Plaintiff Victoria Caswell is an occasional visitor to Interstate.  (Caswell Aff. ¶¶ 2-3.)  The buildings and real property housing Interstate are located directly on the extended centerline of the new north-south runway at the Airport.  (Caswell Aff. ¶ 7, Ex. A.)  This location falls within "Safety Zone B," and accordingly, the Ordinance prohibits specific land uses in Interstate's location, including churches, amphitheaters, and gasoline stations.  See Bloomington City Code § 19.38.03(c).

Plaintiffs commenced this action on October 28, 2005, alleging that the Ordinance violates constitutional rights guaranteed under the Equal Protection Clauses of the United States and Minnesota Constitutions.  (Compl. ¶ 31.)  In essence, Plaintiffs claim that the Ordinance fails to protect them from health and safety risks associated with the new north-south runway on an equal basis with those entities prohibited by the Ordinance from existing in the same location.  (See Compl. ¶ 27.)  The City now moves for summary judgment on Plaintiffs' claim.

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  For the purposes of summary judgment, a fact is "material" if its resolution will determine the outcome of the case, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Upon a summary judgment motion, the moving party carries the burden of showing there is no genuine issue of material fact, and all evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**ANALYSIS**

In this case, Plaintiffs allege a single claim for "equal protection of the laws under the state and federal constitutions." (Compl. ¶ 29.)  Plaintiffs allege that "the City's action in passing the [O]rdinance fails to protect Plaintiffs . . . from acknowledged health and safety risks which do not discriminate among individuals based upon their age, sex, occupation or other personal attributes, and do [not] increase or decrease based upon whether an individual is engaged in work, leisure time or other activities." (Compl. ¶ 27.)  Plaintiffs contend that "the City's decision to provide less protection to the health and safety of Plaintiffs . . . based upon the name on the building which they occupy provides less protection of the fundamental rights of Plaintiffs . . . to life and liberty than the City

would provide to other classes of similarly situated citizens to which Plaintiffs . . . do not belong." (Compl. ¶ 27.) In support of its summary judgment motion, the City advances two arguments: (1) Plaintiffs lack standing to assert their equal protection claim, and (2) should the Court determine that Plaintiffs have standing, the equal protection claim fails on its merits. (Mem. in Supp. at 10-16.) The Court will address each in turn.

**I.      Standing**

Article III of the United States Constitution confines the federal courts to adjudicating actual "cases" or "controversies."[1] U.S. Const. art. III, § 2, cl. 1. While a variety of doctrines have evolved under the case or controversy requirement, none is more important than the requirement that the plaintiff have standing. See Allen v. Wright, 468 U.S. 737, 750 (1984). The standing requirement

> embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of general grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

Id. at 741 (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75 (1982)). To establish standing, the plaintiff

---

[1] Article III standing requirements apply with equal force to litigants asserting claims arising under the Minnesota Constitution. See Metropolitan Express Servs. v. City of Kansas City, 23 F.3d 1367, 1369-70 (8th Cir. 1994) ("[I]f a plaintiff does not meet the Article III standing requirements, a federal court does not have power to hear his [state law] claim."). Therefore, the Court's analysis and conclusion on standing applies with equal force to both bases for Plaintiffs' equal protection claim.

must "demonstrate that he [or she] has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997); Wilcox Elec. v. F.A.A., 119 F.3d 724, 727 (8th Cir. 1997).

In this case, the City argues that Plaintiffs cannot establish redressability. (Mem. in Supp. at 10.) "Under the Constitution's 'cases or controversies' clause, a party must [establish] a . . . redressable injury in order to pursue a lawsuit." Brouhard v. Lee, 125 F.3d 656, 661 (8th Cir. 1997). To establish redressability, "it must be more than merely speculative that the relief requested would have any effect to redress the harm to the plaintiff." Hall v. LHACO, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998). In determining whether a plaintiff has established redressability, the court asks: "how likely is it that a judgment will do the victor any good?" Harp Adver. Illinois v. Village of Chicago Ridge, 9 F.3d 1290, 1292 (7th Cir. 1993).

The City contends that based on Minnesota Statute § 360.064(2), a ruling striking down the Ordinance would not redress Plaintiffs' alleged injury because in its absence, the identical zoning ordinance promulgated by the JAZB would control. (Mem. in Supp. at 11.) "As a result, a victory in this matter would be a Pyrrhic[2] one; Plaintiffs' business would be

---

[2] A "Pyrrhic victory" is defined as "a victory that is accompanied by enormous losses and leaves the winners in as desperate shape as if they had lost." The New Dictionary of Cultural Literacy (3ed ed 2002). "Pyrrhus was an ancient general who, after defeating the Romans, told those who wished to congratulate him, 'One more such victory and Pyrrhus is undone.'" Id.

6

subject to exactly the same restrictions as before they brought the lawsuit." (Id.) In response, Plaintiffs claim that state law only requires the City's zoning ordinance regulating land use surrounding the new north-south runway at the Airport to meet the minimum requirements set forth in the JAZB regulation. (Mem. in Opp'n at 15.) Therefore, Plaintiffs argue that the City "may enact an ordinance free from the constitutional infirmities identified by this Court." (Mem. in Opp'n at 15.)

The United States Supreme Court addressed the issue of standing in the context of zoning restrictions in Warth v. Seldin, 422 U.S. 490 (1975). In Warth, several plaintiffs challenged the constitutionality of exclusionary zoning practices in Penfield, a suburb of Rochester, New York. 422 U.S. at 493. The plaintiffs included Rochester residents who wanted to live in Penfield, but claimed that they could not because the zoning practices prevented construction of multi-family dwellings and low income housing. Id. at 494  The Supreme Court held that the citizens of Rochester did not have standing to challenge the exclusionary zoning practices of another community because their claimed injury of increased taxation turned on the prospective and independent actions of a third party, namely the officials of Rochester. Id. at 509; see Clinton v. City of New York, 524 U.S. 417, 431 n.19 (1998).  "The record is devoid of any indication that these projects, or other like projects, would have satisfied petitioners' needs at prices they could afford, or that, were the court to remove the obstructions attributable to the respondent, such relief would benefit petitioners." Warth, 422 U.S. at 505-506.

In the present case, the Court concludes that Plaintiffs have failed to show that a favorable ruling will redress their alleged injury. The City does have the option to adopt a more restrictive zoning ordinance than the regulation created by the JAZB:

> The prohibited uses enumerated in subpart 6, item E, subitem (5) are only those which present the most severe safety hazards to the air traveling public or persons on the ground, as the case may be. *Local governmental units may also prohibit other land uses* in safety zones A and B as being unsafe to the public. The use restrictions contained in items A to D provide guidance as to what uses the commissioner deems not to be public interest in these safety zones.

Minn. R. § 8800.2400(6)(E)(7) (emphasis added). However, the City is not required to have a more prohibitive law, evidenced by its adoption of the Ordinance, which is identical to the JAZB ordinance. (Compare Ursu Aff. Ex. E with Ursu Aff. Ex. D.) If the Court were to declare the Ordinance unconstitutional as applied to Plaintiffs, the identical JAZB ordinance would govern:

> In the event of conflict between any airport zoning regulations adopted under sections 360.11 to 360.076, and any other regulations applicable to the same area, whether the conflict be with respect to the height of structures or trees, the use of land, or any other matter, and whether such other regulations were adopted by the municipality which adopted the airport zoning regulations or by some other municipality, *the more stringent limitation or requirement shall govern and prevail.*

Minn. Stat. § 360.064(2) (emphasis added). Plaintiffs have failed to produce any evidence indicating that the City has considered or would consider a more restrictive zoning ordinance than the minimum standards required by state law. See Warth, 422 U.S. at 505-506 ("the record is devoid of any indication that . . . such relief would benefit petitioners"). Furthermore, the City is prohibited by state law from extending the Ordinance's list of

prohibited uses to include pre-existing uses such as Interstate's activities. See Minn. Stat. § 360.066(2) ("[n]o airport zoning regulations . . . shall require the removal, lowering, or other change or alteration of any structure or tree not conforming to the regulations when adopted or amended, or otherwise interfere with the continuance of any nonconforming use . . . ."); see Hooper v. City of Saint Paul, 353 N.W.2d 138, 140 (Minn. 1984) (describing constitutional protection given to prior nonconforming land uses). Plaintiffs have failed to establish that a favorable decision in this case would redress their alleged constitutional injury. Accordingly, summary judgment will be granted based on Plaintiffs' lack of standing.

## II.     Merits of Plaintiffs' Equal Protection Claim

Although Plaintiffs failure to establish standing in this case is a sufficient basis for summary judgment, the Court will address the City's other argument — that Plaintiffs' equal protection claim fails on its merits — for the sake of completeness. "The equal protection clause is essentially a direction that all persons similarly situated should be treated alike." Cornerstone Bible Church v. City of Hastings, 948 F.2d 464, 471 (8th Cir. 1991). The first step in an equal protection case is to determine whether the plaintiff has demonstrated different treatment than others who were similarly situated. Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). The plaintiff must show that he was similarly situated "in all relevant respects." Carter v. Arkansas, 392 F.3d 965, 969 (8th Cir. 2004) (citation and internal quotations omitted).

9

In this case, the City argues that "Plaintiffs cannot show that habitues of a business are similarly situated in all relevant respects — for instance, population density, time of use, or light pollution — to those who frequent campground, amphitheater, or church." (Mem. in Supp. at 13.) Plaintiffs attempt to narrow the issue and counter that "there are fact questions on the issue of whether [they] are similarly situated to people who attend church." (Mem. in Opp'n at 22.) Plaintiff Jeffrey Caswell identifies a list of activities that take place within the confines of Interstate, such as "training sessions, small group meetings, casual eating experiences, and social functions," and compares these with the activities enumerated in the Affidavit of Donald Imsland, "a seminary graduate and long time member of several different churches." (Mem. in Opp'n at 24; Caswell Aff. ¶ 11; Imsland Aff. at 7-9.) Based on this, Plaintiffs argue that "facts supporting the argument that Plaintiffs are being treated dissimilarly from churches have been presented in this case" and "summary judgment must be denied." (Mem. in Opp'n at 27.)

The Court concludes that Plaintiffs have failed to establish a genuine issue of material fact on the issue of whether they are similarly situated "in *all* relevant respects" to those land uses prohibited by the Ordinance. See Koscielski, 393 F. Supp. at 814 (emphasis added). The only evidence submitted by Plaintiffs is the Affidavit of Donald Imsland, which contains a list of church-related activities. While this shows that many of Plaintiffs' activities are indeed similar to what occurs in a church, there is certainly no showing that Interstate is similarly situated to a church in *all relevant respects*, and Plaintiffs fail to address any of the other entities protected by the Ordinance, such as a

gasoline station, amphitheater, or campground.  Furthermore, the fact that Interstate constitutes a preexisting nonconforming land use and a church constitutes a possible future land use is a major distinguishing characteristic.  See Merry Charters, L.L.C. v. Town of Stonington, 342 F. Supp. 2d 69, 76-78 (D. Conn. 2004) (finding that a preexisting nonconforming use is not similarly situated for the purposes of an equal protection claim).  Absent a showing that Plaintiffs are similarly situated, their equal protection claim is not viable.[3]  Klinger, 31 F.3d at 731.

Had Plaintiffs made such a showing, however, their equal protection claim would still fail.  Although Plaintiffs argue that their equal protection claim hinges on a fundamental right, they have provided no direct legal support for the proposition.  (Mem. in Opp'n at 18-20.)  Therefore, the ordinance is examined under the rational basis test.  Bannum, Inc. v. City of St. Charles, 2 F.3d 267, 270 (8th Cir. 1993).  Under this test, the Ordinance must be upheld if it is rationally related to a legitimate governmental purpose.  Bannum, 2 F.3d at 270.  The Ordinance is to be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the [statutory] classification."  FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  Plaintiffs bear the "heavy burden" of showing that the Ordinance is arbitrary and irrational.  Bannum, 2

---

[3] The Minnesota Constitution also requires Plaintiffs to show that they are similarly situated in all relevant respects in order to sustain an equal protection claim.  St. Cloud Police Relief Ass'n v. City of St. Cloud, 555 N.W.2d 318, 320 (Minn. Ct. App. 1996).  Therefore, Plaintiffs' equal protection claim based on the state constitution fails for the same reasons as their federal constitutionally-based claim.

F.3d at 270 (citation and internal quotations omitted); see Beach Communications, 508 U.S. at 315.

In this case, the City argues that the Ordinance passes the rational basis test because "it is designed to protect the public health, safety, and prosperity," which "are unquestionably legitimate ends for the government to pursue" and "preventing the creation and establishment of Airport Hazards is rationally linked to public health and safety." (Mem. in Supp. at 15-16.) "Because a government regulation need not be made with mathematical nicety to be consistent with the Equal Protection Clause," the City argues that Plaintiffs' claim fails. (Mem. in Supp. at 16.) While Plaintiffs concede that "the legitimate government interest in this case is protecting public safety," they argue that the Ordinance is not rationally related to such interest. (Mem. in Opp'n at 27.) Plaintiffs contend that "the allowance of business where persons have the same or even increased [safety] risk bears no rational relationship to protecting the health and safety of people on the ground and in the air." (Mem. in Opp'n at 28.) In addition, Plaintiffs submit the Affidavit of Dr. Kimberly Thompson, a Professor of Risk Analysis and Decision Science at the Harvard School of Public Health, to show that the City never conducted a cost-benefit analysis to justify "the distinctions between Interstate and a church." (Mem. in Opp'n at 29; Thompson Aff. ¶¶ 8-10.)

The Court concludes that the Ordinance is rationally related to legitimate government interests in this case. The sole issue is whether Plaintiffs have shown that the

City's zoning ordinance is arbitrary and irrational. Bannum, 2 F.3d at 270. The "purpose and intent" section of the Ordinance reads:

> It is the purpose of the Airport Runway Overlay Districts *to protect the public health, safety, order, convenience, prosperity and general welfare and to promote the most appropriate use of land by preventing the creation or establishment of Airport Hazards* subject to the 2004 MSP Zoning Ordinance and Minnesota Statutes.

Bloomington City Code § 19.38.03(a) (emphasis added). According to this clause, the City intends to achieve its legitimate government interests — such as protecting health and safety — by "preventing the *creation and establishment of Airport Hazards*." Id. Plaintiffs have not presented sufficient evidence to show that this is arbitrary or irrational. Furthermore, the Ordinance does not affect Interstate because the company's location was already existed at the time the Ordinance was adopted by the City; the Ordinance is in accord with state law, which prohibits the City's zoning regulations from interfering with *prior* lawful nonconforming use. See Minn. Stat. § 360.066(2). Accordingly, because Plaintiffs have failed to meet their heavy burden to demonstrate that the City's zoning ordinance is arbitrary and irrational, summary judgment is appropriate.

Although Plaintiffs may believe that the City's ordinance is unwise and unfair, it is not the Court's role in cases such as this "to judge the wisdom, fairness, or logic of legislative choices." Beach Communications, 508 U.S. at 313. As the Supreme Court has said, "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that

13

judicial intervention is generally unwarranted . . . ." Id. (citation and internal quotations omitted).

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, it is

**ORDERED** that the City's Motion for Summary Judgment (Doc. No. 7) is **GRANTED**, and Plaintiffs' Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: April 28, 2006                                         s/ Richard H. Kyle
                                                             RICHARD H. KYLE
                                                             United States District Judge